Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| CRISTINA Y. PIZARRO HERNÁNDEZ Y OTROS<br><br>Apelante<br><br>v.<br><br>TO-RICOS, LTD<br><br>Apelados | KLAN202400141 | Apelación procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Sobre:<br>Ley de Acción de Clase del Consumidor, Enriquecimiento Injusto, Daños<br><br>Caso Núm.:<br>HU2023CV01103 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

Los apelantes, Cristina Y. Pizarro Hernández, Carlos Roberto Avilés Cartagena, Carmen E. Gómez Ocasio, Carminee Márquez Arroyo, Denisse Marie Hernández, Jan Roberto González Rodríguez, Justin Christopher Pagán Jiménez, Kenny Lozada Maymí, Ketty Inés Roque Ortiz, Obdulia Walker Rivera y Rafael Maymí Rodríguez, comparecen ante nos para que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Humacao el 16 de enero de 2024, notificada el 17 de enero de 2024. Mediante la misma, el tribunal de origen desestimó un pleito de clase sobre enriquecimiento injusto y daños por prácticas engañosas, incoado en contra de la apelada To-Ricos, Inc.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 1 de agosto de 2023, los apelantes presentaron la demanda de epígrafe. En esencia, imputaron a la entidad apelada haber

incurrido en una práctica engañosa, consistente en no incluir, en el peso neto informado de los pollos en venta, el peso del agua retenida, la envoltura de plástico que los embala, así como el de las demás soluciones que se le añaden. Según sostuvieron, dada dicha conducta, vieron afectados sus intereses y patrimonio como consumidores, toda vez que pagaban en exceso por una mercancía que no era lo que realmente se les estaba vendiendo. Al amparo de ello, los apelantes afirmaron que To-Ricos se enriqueció injustamente por dicha práctica, todo en violación a las disposiciones estatales y federales pertinentes. De este modo, solicitaron al Tribunal de Primera Instancia que certificara su pleito de clase y proveyera para que la entidad apelada devolviera toda suma de dinero cobrada en exceso sin justa causa. Por igual, en su súplica, los apelantes solicitaron que se condenara a To-Ricos al pago de una indemnización suficiente por todos los daños resultantes de la práctica engañosa imputada, así como que le exigiera cesar de continuar con la conducta en controversia.

El 5 de octubre de 2023, la apelada To-Ricos presentó una *Solicitud de Desestimación.* En el pliego, alegó que los apelantes carecían de remedio en ley a su favor, ello al afirmar que la causa de acción de autos pretendía imponerles una responsabilidad correspondiente a terceros no acumulados en el pleito. Específicamente, negó ser la persona encargada de establecer el precio neto de sus productos, ello al afirmar que, tal potestad, junto con la de anunciar la mercancía y la de cobrar por la misma, correspondía a los establecimientos, supermercados y vendedores al detal en los que se comercializaba. Al amparo de dicha afirmación, sostuvo que la no inclusión de tales personas redundaba en la falta de partes indispensables en el pleito, hecho que incidía sobre la autoridad del tribunal para atender los méritos de la demanda. Igualmente, To- Ricos sostuvo que la causa de acción de epígrafe

incumplía con los criterios pertinentes para poder certificarse como un pleito de clase, y afirmó que las alegaciones en la demanda carecían de especificidad en cuanto a su persona, así como que no establecían un nexo causal con los daños reclamados.

En su alegación responsiva, To-Ricos aludió a los términos del *Poultry Products Inspection Act,* 21 USC Sec. 451 (PPIA), para sostener que los mismos ocupaban el campo en la materia objeto de litigio. Específicamente, indicó que la referida reglamentación federal gobernaba todo lo relacionado a las etiquetas de productos avícolas en nuestra jurisdicción y que nada en sus términos imponía requisito alguno relacionado a la obligación de los productores avícolas de incluir, en las mismas, el costo por el nivel de retención de agua del pollo, ni su peso exacto. A tenor con ello, la empresa apelada indicó que las reclamaciones de los apelantes pretendían imponer exigencias adicionales a los estatuidos en la PPIA, por lo que las mismas estaban prohibidas a la luz de dicha reglamentación. A los fines de sostener sus argumentos, To-Ricos incluyó en su pliego imágenes de las etiquetas, destacando el contenido de su información.

La empresa apelada calificó de inmeritorios y frívolos los argumentos de los peticionarios, así como, también, carentes de apoyo legal. De este modo, a la luz de sus argumentos, y al amparo de lo dispuesto en la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA AP. V, R. 10.2 (5), solicitó al Tribunal de Primera Instancia que desestimara el pleito de autos e impusiera a los apelantes el pago de honorarios de abogado.

Así las cosas, el 21 de noviembre de 2023, los apelantes presentaron una *Primera Enmienda a Demanda de Clase.* En esta ocasión, además de añadir miembros a la parte demandante, reprodujeron sus previas alegaciones sobre enriquecimiento injusto y prácticas engañosas. Ahora bien, en esta ocasión, plantearon que,

durante la etapa del procesamiento, se añadían agua y soluciones de preservación al pollo, de modo que se pudiera congelar. Sostuvieron que tal retención de líquidos, le añadía un peso considerable al pollo y que, tras ser empacado, los mismos comenzaban a dimanar, manteniéndose dentro del empaque, y representando hasta un veinte cinco por ciento (25%) de peso añadido al producto. Los apelantes sostuvieron que lo anterior redundaba en que los consumidores pagaran en exceso por el producto, sin estar debidamente informados de las partidas incluidas en el precio impuesto, constituyendo, ello, una ganancia ilegal para la entidad apelada. De esta forma, se reiteraron en que To-Ricos era responsable por el cobro en exceso por las ventas, razón por la cual se reiteraron en su súplica.

Tras ciertas incidencias, el 13 de diciembre de 2023, los apelantes presentaron su *Oposición a Solicitud de Desestimación.* En principio, indicaron que la solicitud de desestimación promovida por To-Ricos podía considerarse como una moción de sentencia sumaria, toda vez que la misma se acompañó con prueba. Sobre dicho particular, expusieron que las fotos e imágenes de las etiquetas del producto que la entidad incluyó en su pliego no eran suficientes para establecer que las mismas cumplían con las regulaciones de ley pertinentes. Al abundar, sostuvieron que To-Ricos no incluyó declaración o certificación alguna que acreditara que las etiquetas fueron inspeccionadas por el *Food Safety and Inspection Service* (FSIS), por lo que cuestionaron la procedencia y contenido de las mismas.

En su escrito, los apelantes también negaron la aplicación de la defensa de parte indispensable, ello al sostener que los supermercados y establecimientos que vendían la mercancía de la apelada To-Ricos, no eran los encargados de establecer los precios de venta. De igual forma, plantearon que las alegaciones sobre

campo ocupado a tenor con las disposiciones del estatuto federal PPIA eran improcedentes, toda vez que su reclamación no estaba predicada en la inclusión u omisión de información en la etiqueta de empaque de los pollos, sino en una alegada práctica engañosa relacionada al cálculo del peso del pollo y su correlación con el precio de venta. Así, sostuvieron que la demanda contra To-Ricos exigía la responsabilidad correspondiente por el hecho de que la empresa se estaba lucrando, de manera ilegal, al cobrar por el agua retenida en los pollos y el peso del empaque, sin que le fuera notificado a los consumidores. Por tanto, y reafirmándose en el cumplimiento de los requisitos procesales y sustantivos pertinentes a la certificación del pleito de clase, los apelantes solicitaron que se denegara la desestimación peticionada.

El 27 de diciembre de 2023, la apelada To-Ricos presentó su escrito de réplica a la oposición de referencia. En lo atinente, expresó que, dado a que su solicitud de desestimación podía entenderse como una sentencia sumaria, según lo argumentado por los apelantes, estos, en el ánimo de oponerse a las misma, debieron haber cumplido con las exigencias procesales estatuidas en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. A su vez, añadió que los argumentos de los apelantes eran contradictorios entre sí, puesto que, por un lado planteaban la ausencia de una certificación emitida por la FSIS respecto a la validez de sus etiquetas, y, por el otro, afirmaban que su reclamación no estaba fundada en la información contenida en el empaque. La apelada To-Ricos se reafirmó en que las alegaciones de los apelantes respecto al desconocimiento de los consumidores, contrario a lo que planteaban, en efecto iban dirigidas a atacar el contenido de las etiquetas de sus productos avícolas. A tenor con ello, se sostuvo en que dicha materia era un campo ocupado por la PPIA y añadió que la regulación no exigía que se incluyeran, en las etiquetas, datos

relacionados al nivel de retención de agua del producto, ni al peso exacto del pollo.

To-Ricos indicó que, de los hechos no refutados por los apelantes, claramente surgía que no tenía inherencia en la imposición del precio ni en el cobro de sus productos. Sobre este particular, reprodujo su previa contención, en cuanto a que tal prerrogativa correspondía a los supermercados y puntos de venta de los mismos, por lo que ninguna responsabilidad predicada en alegaciones sobre prácticas engañosas podía atribuírsele. A tenor con ello, se reafirmó en sus alegaciones sobre falta de parte indispensable, en la ausencia de remedio alguno a favor de los apelantes, así como, también, en el incumplimiento de los criterios para certificar el pleito de autos como uno de clase. De este modo, y sosteniéndose en que las enmiendas a la demanda de epígrafe no alteraron la esencia de la reclamación en disputa, To-Ricos se reafirmó en la procedencia de la desestimación solicitada.

El 17 de enero de 2024, el Tribunal de Primera Instancia notificó la *Sentencia* apelada. Tras acoger la solicitud de desestimación promovida por To-Ricos como una de sentencia sumaria, y luego de determinar que el caso interrumpió el término para todos los miembros de la clase demandante, concluyó que carecía de jurisdicción sobre la materia en controversia. En específico, expresó que, tal cual aducido por la apelada To-Ricos, el estatuto federal PPIA ocupaba el campo, toda vez que las alegaciones de la demanda de autos se fundamentaban en una supuesta práctica engañosa relacionada a la información contenida en la etiqueta de los productos avícolas de la entidad compareciente. En específico, indicó que la reclamación de los apelantes, ello en cuanto a que el consumidor no contaba con información relativa al verdadero peso de la carne, del agua retenida y de la envoltura del producto, pretendía modificar o añadir los ingredientes contenidos

en la etiqueta del mismo, materia específicamente regulada por la reglamentación federal en disputa. De este modo, el foro sentenciador desestimó con perjuicio la acción de epígrafe.

Inconformes, el 11 de febrero de 2024, los apelantes comparecieron ante nos mediante el presente recurso de apelación. En el mismo formulan el siguiente señalamiento:

> Erró el TPI al desestimar la demanda, ya que la legislación federal no ocupa el campo para las reclamaciones de los apelantes.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

## II

### A

Nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 121 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *SLG Sierra v. Rodríguez,* 163 DPR 738, 746 (2005). En este contexto, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Creas Inc.,* 118 DPR 679, 686-687 (1987).

Ahora bien, la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), provee para que una parte solicite al foro

competente la desestimación de un pleito incoado en su contra, bajo el fundamento de que la reclamación en controversia no justifica la concesión de un remedio. Esta defensa "no está sujeta a la regla general sobre acumulación y renuncia de defensas" establecida en el ordenamiento procesal, y "puede aducirse en cualquier alegación responsiva, en una moción para que se dicte sentencia por las alegaciones e, incluso, luego de comenzado el juicio". *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043, 1067 (2020). En atención a la política pública antes expuesta, para que el referido mecanismo de desestimación proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas. *Costa Elena y otros v. Magic Sport y otros,* 2024 TSPR 13, 213 DPR ___ (2024); *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 78 (2023); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, pág. 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 504-505 (1994).

De igual forma, el pliego de que trate deberá ser interpretado con mayor liberalidad a favor de las alegaciones de la parte demandante, por lo que, recayendo la carga probatoria en el promovente de la moción de desestimación, este viene obligado a demostrar que aquel no tiene derecho a remedio alguno al amparo de los hechos que puedan ser probados en apoyo a su requerimiento. *Dorante v. Wrangler of P.R.,* 145 DPR 408, 414 (1998). En este supuesto, la función judicial estriba en determinar si, aun resolviendo toda incertidumbre en beneficio de la parte demandante, su demanda es suficiente para constituir una reclamación válida. *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505. Ahora bien, si en una moción de desestimación al amparo de la Regla 10.2 (5) *supra,* "se exponen materias no contenidas en la

alegación impugnada, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 [...]". 32 LPRA Ap. V, R. 10.2(5). Cónsono con dicha premisa, la doctrina interpretativa reconoce que "[c]uando se presenta una moción de desestimación acompañada de prueba, la transforma [...] en una moción de sentencia sumaria; y dispone que sea considerada como tal". R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., San Juan, LexisNexis, 2010, pág. 269.

**B**

De otro lado, a Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García,* 2023 TSPR 103, 212 DPR ___ (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto,

el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra; *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que

sirven de apoyo a su contención.  32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes.  32 LPRA Ap. V, R. 36.5.  Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario.  *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007).  En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación.  Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente.  Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud.  *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000).  Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos.  *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990).  Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales

y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> **Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**C**

Por su parte, la doctrina del *campo ocupado* se fundamenta en la Cláusula de Supremacía establecida en la Constitución de los Estados Unidos, que dispone como sigue: [t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; [...] shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding". Art. VI, Const. EE. UU., LPRA, Tomo 1. La misma, también conocida como *doctrina de desplazamiento*, pretende evitar conflictos regulatorios entre dos gobiernos y fomentar, de este modo, una política uniforme sobre una materia específica. *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5, 14 (2016); *Natal Cruz v. Santiago Negrón*, 188 DPR 564, 571-572 (2013). Así, el Congreso se reserva la potestad de regular ciertas áreas de derecho a nivel estatal, concediendo jurisdicción exclusiva al Gobierno federal, ello en los siguientes escenarios: 1) cuando así lo haya expresado el Congreso; 2) cuando la clara intención de la ley sea privar de jurisdicción a los tribunales estatales; 3) cuando el interés o propósito federal es tan dominante que no debe existir reglamentación estatal; o 4) cuando la normativa estatal podría producir un resultado incompatible con los objetivos federales en determinada área. *Lilly del Caribe v. Mun. de Carolina,*

210 DPR 306, 318-319 (2022). En lo atinente, destacamos que la doctrina de campo ocupado es extensible a Puerto Rico. *Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 499, 108 S. Ct. 1350, 99 L. Ed. 2d 582 (1988).

Pertinente a la controversia de autos, la regulación federal *Poultry Products Inspection Act*, 21 USC sec. 451 *et seq.,* (PPIA) rige la materia relativa al contenido de las etiquetas de los productos avícolas. De conformidad con el propósito explícito de sus términos, según estatuido en su Sección 452, el referido estatuto, provee para, entre otros fines, la inspección de los productos avícolas, de modo que no sean adulterados ni mal etiquetados.[1] Sus disposiciones son de aplicación a todos los estados de la Unión, así como, también a sus territorios. *Northwestern Selecta Inc. v. Secretary of Department of Agriculture of Puerto Rico*, Civil No. 22-1092(RAM), 28 de junio de 2023. En lo concerniente a su aplicación, la PPIA expresamente reconoce su oponibilidad en la materia que regula. Así, a los efectos de desplazar cualquier regulación que incida sobre sus términos, reza como sigue:

> [...]
>
> Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment. **Marking, labeling, packaging, or ingredient requirements (or storage or handling**

---

[1] Específicamente, la Sección 452 de la PPIA, reza como sigue:

> It is hereby declared to be the policy of the Congress to provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles as hereinafter prescribed to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by, poultry products which are adulterated or misbranded. [...].

> 21 USC sec. 452.

**requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory** or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter, but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.

21 USC sec. 467e.  (Énfasis nuestro).

### III

En la presente causa, los apelantes plantean que el Tribunal de Primera Instancia erró al desestimar su causa de acción, bajo el fundamento de falta de jurisdicción sobre la materia.  En específico, aducen que, contrario a lo resuelto, la regulación federal PPIA no ocupa el campo de su reclamación, toda vez que, aducen, la misma no se basa en la inclusión de información en las etiquetas de empaque del producto de To-Ricos, sino en una práctica engañosa relacionada al peso y al precio de la carne.  Habiendo entendido sobre el referido señalamiento a la luz de los hechos establecidos y el derecho aplicable, confirmamos la *Sentencia* apelada.

Un examen del expediente que nos ocupa mueve nuestro criterio a concluir que el pronunciamiento que atendemos es uno conforme a derecho.  Nada en el expediente sugiere que, en su gestión, el tribunal primario haya transgredido los límites procesales y sustantivos impuestos a su función, así como, tampoco, al mecanismo adjudicativo empleado.  Es nuestra firme postura que los apelantes no expusieron alegaciones específicas respecto a la

entidad apelada, de modo que pudiera intimarse que ostentan alguna probabilidad de prevalecer en el reclamo que promovieron en su contra. Estos no hicieron alegación específica sobre la supuesta responsabilidad concreta de To-Ricos, en la correlación del peso de los pollos y el precio de venta, así como, tampoco, en el cobro del mismo. Sobre este particular, surge que To-Ricos es una empresa procesadora de productos avícolas que no tiene injerencia alguna en la imposición del precio del pollo. Al respecto, en su escrito en oposición a la desestimación solicitada, los apelantes no controvirtieron dicha afirmación. Por tanto, en ausencia de un reclamo particular basado en alegaciones suficientes en contra de la compañía apelada, a fin de que se le pueda vincular con los daños reclamados, forzoso es concluir que ningún remedio en ley les asiste a los apelantes.

De otra parte, tal y como concluyó el Tribunal de Primera Instancia, la materia de la causa de epígrafe es una sujeta al campo ocupado por las disposiciones de la regulación federal PPIA. Una cuidadosa lectura de las alegaciones expuestas en la demanda de autos, denota que las mismas van dirigidas a impugnar el contenido informativo de las etiquetas de los productos en controversia. Ciertamente, mediante su causa de acción por prácticas engañosas, los apelantes pretenden modificar el contenido de las etiquetas de los pollos To-Ricos. Específicamente, procuran que se incluya en las mismas el peso del agua retenida por el pollo, así como el del embalaje. Conforme esbozado en nuestra previa exposición doctrinal, el contenido de las etiquetas de los productos en cuestión está expresamente regulada por los términos de la ley PPIA, por lo que los estados y territorios están impedidos de añadir requisitos adicionales a los allí contenidos. En este sentido, apuntamos a que los apelantes, en momento alguno alegan que se infringieron los términos de dicho estatuto federal. De hecho, no refutan la

suficiencia y la validez del contenido de las etiquetas anejadas por la empresa compareciente en su solicitud de desestimación. Por tanto, estamos impedidos de asumir jurisdicción sobre un asunto desplazado de la ejecución de nuestras facultades.

En mérito de lo antes expuesto, sostenemos lo resuelto. Los apelantes no exponen una reclamación específica en contra de la apelada To-Ricos que amerite un remedio en ley. De igual modo, en el caso de epígrafe, opera la doctrina del campo ocupado, hecho que nos impide asumir autoridad.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones